IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL HELICOPTOR PILOTS ASSOCIATION LOCAL 102; RONALD L. ARSENAULT; JAMES LEE BLOXSOM; DAVID L. HAMILTON; ALBERT J. HOUSER; DAVID L. OLTMANS; and GILBERT M. POLAND, | )))))))))) | |
| Plaintiffs, | )) | |
| v. | )) | CASE NO. 1:13-CV-164-WKW [WO] |
| U.S. DEPARTMENT OF THE ARMY; and JOHN M. McHUGH, in his capacity as Secretary of the Department of the Army, | ))))) | |
| Defendants. | )) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Professional Helicopter Pilots Association Local 102 ("PHPA") and six of its union members filed this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–06, against the U.S. Department of the Army and its Secretary. The individual Plaintiffs work for URS Federal Support Services ("URS") as civilian contract employees and provide helicopter flight instruction at Fort Rucker. At the time of the Complaint's filing, the individual Plaintiffs alleged that their jobs were in jeopardy based upon the then-impending implementation of

a 250-pound weight-limit policy contained in the contract negotiated between the Army and URS. PHPA joins the individual Plaintiffs seeking to stop implementation of the weight-limit policy against the individual Plaintiffs. Defendants responded with a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(6), and (b)(7). (Docs. # 20, 21.) Plaintiffs filed a memorandum of law in opposition (Doc. # 27), to which Defendants filed a reply (Doc. # 30). After careful consideration of the arguments of counsel, the relevant facts, and the applicable law, the court finds that the Motion to Dismiss is due to be granted on mootness grounds pursuant to Rule 12(b)(1).[1]

## I. BACKGROUND

PHPA is a labor organization that represents civilian flight instructors employed by URS, a private contractor of the U.S. Department of the Army. The six individual Plaintiffs are members of PHPA and employees of URS. They work at the U.S. Army's base at Fort Rucker in Alabama. Five Plaintiffs work as helicopter flight instructors, and the sixth Plaintiff works as a helicopter flight simulator instructor.[2]

---

[1] Because the issue of mootness is dispositve, it is unnecessary to address Defendants' other arguments based upon lack of standing, failure to join a necessary party, and failure to state a claim upon which relief can be granted.

[2] A flight simulator instructor is a non-flying, teaching position.

Pursuant to the contract between the Department of the Army and URS, the Army pays URS to provide helicopter flight training at Fort Rucker in all four of its divisions in the helicopter flight instruction program.   URS, in turn, hires civilian employees, including the individual Plaintiffs, who are qualified to teach helicopter flight skills to active duty and reserve Army, Air Force, and other defense personnel.   URS's flight instructors are not under the direct authority of the Army, but rather are under the supervision of URS.

URS and PHPA are parties to a collective bargaining agreement ("CBA"), with effective dates of October 1, 2011, through September 30, 2014.   The CBA establishes the terms and conditions of employment for all URS bargaining unit employees, including the individual Plaintiffs.   (*See* Compl., Ex. A (CBA).)   The CBA includes a provision that permits suspension and discharge of URS's employees only "for just cause."   (CBA, Art. XIV.)   The CBA also includes a four-step procedure for resolving charges that a URS employee has committed an offense warranting either suspension or termination.   (CBA, Art. VIII.)   The procedure provides for verbal and written notice of the charge, a due process meeting, a final decision meeting, and an opportunity to challenge any adverse action pursuant to the negotiated grievance procedure contained in the CBA.   (*See* CBA, Art. VII.)

In September 2012, PHPA "was advised" that the Army was imposing a weight limit on all URS-employed flight instructors, including flight simulator instructors and flight instructors who fly TH-67, OH-58, and TH-1 helicopters. (Compl. ¶ 28.) The individual Plaintiffs – five of whom provide flight training for TH-67, OH-58, and TH-1 helicopters and one of whom is a flight simulator instructor – would be subject to the policy.

Pursuant to the weight-limit policy, a flight instructor cannot weigh more than 250 pounds when weighed in his or her flight-duty uniform. Any flight instructor exceeding the 250-pound weight limit would be "deemed ineligible to teach students and w[ould] be placed on paid leave," if the instructor had accrued leave. (Compl. ¶ 28.) An ineligible instructor would retain his or her benefits while on paid leave; however, after exhaustion of paid leave, that instructor would lose all benefits and continue on leave in an unpaid status. An ineligible flight instructor would remain on the seniority roster for up to twenty-four months, but would not be eligible to work unless he or she satisfied the weight-limit policy. The Army represented that the weight-limit policy would go into effect on October 1, 2012, but gave no rationale for the policy.

URS implemented a weight monitoring/control program for the purpose of establishing procedures to comply with contract requirements. It also requested and obtained from the Army a six-month extension until April 1, 2013, for

implementation of the weight-limit policy. (Compl., Ex. B (Weight Monitoring Program).) By letter dated March 12, 2013, URS requested an additional six-month extension of the weight-limit policy from April 1, 2013, to September 30, 2013. (Compl., Ex. E (URS Letter).) The Army rejected URS's request, however. (Compl., Ex. F (Mar. 15 Email).) This lawsuit followed.

Plaintiffs commenced this action on March 18, 2013, alleging that if the weight-limit policy went into effect on April 1, 2013, all six of the individual Plaintiffs would be qualified to serve as helicopter flight instructors at Fort Rucker through their civilian employment with URS, except that they would exceed the 250-pound weight limit. As of March 5, 2013, the individual Plaintiffs exceeded the maximum weight by a range of two to twenty-two pounds.

In the Complaint, Plaintiffs bring claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and (2)(B). They allege that the weight-limit policy included in the contract negotiated between their employer, URS, and the Army violates their Fifth Amendment due process rights (Count I) and is arbitrary and capricious (Count II). In Count I, the individual Plaintiffs assert a deprivation of their "property rights in continued employment with URS" and allege that the weight-limit policy "does not allow [them] to be heard at a meaningful time in a meaningful way before they are deprived of their property right." (Compl. ¶ 49.)

In Count II, Plaintiffs contend that there is no rational basis for the weight-limit policy, in particular for its imposition on flight simulator instructors. Plaintiffs further allege that by imposing the weight-limit policy, the Army treated URS differently from two private contractors that employ civilian helicopter maintenance "test pilots" and instructors "who fly Army helicopters" at Fort Rucker. (Compl. ¶¶ 32, 33; *accord* Pl. Arsenault's Decl. ¶ 9).) Plaintiffs allege that these contract civilian employees "are not subject to any weight limit imposed by the Department of the Army." (Compl. ¶ 32.) Plaintiffs also allege that the Army personnel whom URS instructs in helicopter flight training and the Army's "civilian employees . . . who fly Army helicopters" at Fort Rucker "are not subject to the same 250[-]pound weight limit that the Army seeks to impose on URS helicopter flight instructors." (Compl. ¶¶ 34, 35; *accord* Pl. Arsenault's Decl. ¶ 9.)

Plaintiffs request a declaratory judgment that the weight-limit policy violates the individual Plaintiffs' Fifth Amendment due process rights and is arbitrary and capricious in violation of the APA. Plaintiffs further seek an injunction "prohibiting the Army from enforcing the 250-pound weight[-]limit policy against Plaintiffs." (Compl., at 10 ("Relief Requested").) Plaintiffs allege that "[a]bsent injunctive and declaratory relief against the Defendants' weight[-]limit policy, Plaintiffs have been and will continue to be harmed by the policy." (Compl. ¶¶ 53, 58.)

In response to the Complaint, Defendants filed a motion asserting several grounds for dismissal, including lack of subject matter jurisdiction on standing and mootness grounds.  In support of their motion, Defendants submitted a Declaration from Timothy R. Commerford, a Department of Defense civilian employee who is the Contracting Officers Representative for the Army-URS contract containing the weight-limit policy that is at issue.  Commerford offers relevant and unrefuted testimony about the weight-limit policy's post-implementation effects:  "The weight control program at issue in this litigation was instituted April 1, 2013.  As of the present date [May 24, 2013] there are 0 instructors over the weight limit[,] and URS has missed 0 training events as a result of the program.  In effect, it appears that URS is able to meet its operational requirements with the weight limitation in effect."  (Commerford's Decl., at 4.)

## II. DISCUSSION

Relying on Commerford's Declaration, Defendants argue that this action is moot because no Plaintiff has been injured by the weight-limit policy that went into effect on April 1, 2013.  (*See* Doc. # 21, at 6–7; Doc. # 30, at 11.)  Plaintiffs do not refute Commerford's Declaration, and they admit that they still hold their jobs with URS as helicopter flight instructors at Fort Rucker.  Rather, they assert that "events occurring after the filing of the Complaint are irrelevant" for the jurisdictional inquiry and also that the court cannot consider Commerford's

Declaration on a motion to dismiss.  (Doc. # 27, at 10.)  These arguments are addressed below.

## A.   <u>Evidentiary Scope of Review</u>

Before examining the arguments addressed to mootness, the court must determine the evidentiary scope of review on a motion to dismiss on mootness grounds.  The parties disagree as to whether the court can consider matters outside the pleadings, in particular Commerford's Declaration, in resolving the issue of mootness.  The Eleventh Circuit has instructed district courts to evaluate mootness under Federal Rule of Civil Procedure 12(b)(1).  *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007) ("We have repeatedly said that when a district court disposes of a case on justiciability (mootness) grounds we will treat the district court's determination as if it was ruling on a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1) . . . .").  A Rule 12(b)(1) motion to dismiss may assert either a factual attack or a facial attack to jurisdiction.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); Fed. R. Civ. P. 12(b)(1).  Facial attacks challenge subject matter jurisdiction based on the complaint's allegations.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990).  On the other hand, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the

pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

Based on the foregoing principles, Rule 12(b)(1) governs the analysis because the Motion to Dismiss implicates mootness. Also, because Defendants present a factual attack on subject matter jurisdiction, the court can consider matters outside the pleadings, including Commerford's Declaration, in resolving the jurisdictional issue. Accordingly, the court rejects Plaintiffs' argument that the analysis cannot include consideration of Commerford's Declaration.

## B.   <u>The Mootness Doctrine</u>

Article III of the United States Constitution "limits the jurisdiction of federal courts to cases and controversies." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (citation and internal quotation marks omitted). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "Even if a suit presented a live controversy when filed, if events occur subsequent to the filing of the suit that deprive a court of the ability to provide the plaintiff with meaningful relief, then the case is moot and must be dismissed for lack of jurisdiction." *S. Miami Holdings, LLC v. F.D.I.C.*, ___ F. App'x ___, 2013 WL 4046717, at *4 (11th Cir. Aug. 12, 2013); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68

9

n.22 (1997) ("The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." (citation and internal quotation marks omitted)); *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1267 (11th Cir. 2001) ("[A] party's standing to sue is generally measured at the time of the complaint, with the effect of subsequent events generally analyzed under mootness principles."). "[P]ut another way, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *S. Miami Holdings, LLC*, 2013 WL 4046717, at *4 (quoting *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004)). While Defendants have the burden of establishing mootness, *Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009), Plaintiffs bear the burden of demonstrating an exception to the mootness doctrine. *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007).

Moreover, equitable relief, which Plaintiffs seek in this action, "is a prospective remedy, intended to prevent future injuries." *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.*; *see also Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, 501 F. App'x 929, 937 (11th Cir. 2012)

10

("28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of 'actual controversy,' that is, a 'substantial continuing controversy between parties having adverse legal interests.'" (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985))).

Based on the foregoing principles, it appears that Plaintiffs have conflated principles of standing and mootness in arguing that "events occurring after the filing of the Complaint are irrelevant." (Doc. # 27, at 10.)  Plaintiffs' focus is on standing at the commencement of this lawsuit, while Defendants' focus is on mootness based upon subsequent events (*i.e.*, the fact no individual Plaintiff has been subject to enforcement of the 250-pound weight limit).  However, for the present analysis, the court can assume without deciding that Plaintiffs had Article III standing when they commenced this action.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("'[A] court may assume without deciding that standing exists in order to analyze mootness.'" (quoting *Arizonans for Official English*, 520 U.S. at 66–67)).  The issue is whether subsequent events deprive the court of jurisdiction by rendering the controversy moot.  For the reasons to follow, this action is moot as to the claims of PHPA and the individual members.

As to the individual Plaintiffs' claims, the Complaint, filed in March 2013, alleged that upon implementation of the weight-limit policy on April 1, 2013, all

six individual Plaintiffs would be ineligible to serve as flight instructors because, although otherwise qualified, they would exceed the 250-pound weight limit. Defendants have presented affirmative evidence, however, indicating that regardless of the individual Plaintiffs' anticipated plight when the Complaint was filed, all of URS's flight instructors satisfied the weight-limit policy after its implementation.  Based on Commerford's Declaration, Defendants have shown that the "harm[ ]" the individual Plaintiffs alleged that they would suffer did not materialize either on or after April 1, 2013.  (Compl. ¶¶ 53, 58.)

The individual Plaintiffs in no way have disputed Commerford's Declaration.  They have not submitted any contrary evidence suggesting actual or impending injury or asserted that they lost their jobs or any benefits as a result of the implementation of the weight-limit policy on April 1.  In fact, in their response to the motion to dismiss, the individual Plaintiffs have admitted that they remain employed with URS as flight instructors at Fort Rucker, and they have made no assertion that their jobs are in jeopardy based upon the weight-limit policy.  Events occurring subsequent to the filing of Plaintiffs' Complaint have changed Plaintiffs' status.  This change in status puts an end to the live controversy and, thus, moots the individual Plaintiffs' claims.

As to PHPA's claims, the court assumes without deciding that PHPA also had standing when this lawsuit commenced, but some discussion on associational

standing is necessary for an understanding of the mootness analysis. An association can assert standing either in its own right or on behalf of its members. *See Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1178 (11th Cir. 2009) (discussing standing requirements for organizations). The Complaint does not allege any injury to PHPA's own rights as an entity; rather, it alleges only injuries to the rights of PHPA's members, namely, the individual Plaintiffs. Hence, the court assumes that, when Plaintiffs commenced this lawsuit, PHPA's standing derived through PHPA's members. "'[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Amnesty Int'l, USA,* 559 F.3d at 1178 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

The problem – for purposes of the mootness doctrine – is that previously (at the time of the Complaint's filing) PHPA depended upon the individual Plaintiffs' standing for its own standing, but that presently the individual Plaintiffs' claims are moot. Because PHPA's associational standing hinges on the standing of its

individual members,[3] the later mooting of its members' claims also moots PHPA's claims. *See Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013) (explaining how the criteria of associational standing "bear[s] heavily on the mootness analysis").

In sum, as to the claims of the individual Plaintiffs and PHPA, Defendants have demonstrated that there is no longer a live controversy. Granting the relief requested – namely, a declaratory judgment that the weight-limit policy is arbitrary, capricious, and unconstitutional and an injunction "prohibiting the Army from enforcing the 250-pound weight[-]limit policy against Plaintiffs" (Compl., at 10) – would not be meaningful because the undisputed evidence establishes that Plaintiffs do not presently face enforcement of the weight-limit policy against them.

Plaintiffs nonetheless assert that "the sword of the weight[-]limit policy hang[s] over them." (Doc. # 27, at 10.) Their assertion ends, however, without meaningful analysis or citation to a single authority. This bare assertion cannot sustain Plaintiffs' burden of demonstrating the applicability of an exception to the mootness doctrine. Notwithstanding the shortage of argument, it is true that courts have recognized "that disputes over an ongoing policy may continue, even after the

---

[3] Neither the Complaint nor PHPA's briefing identifies any other PHPA-member flight instructor who is in the position that the individual Plaintiffs were in when this lawsuit commenced.

specific offense precipitating the suit has become moot." *Milwaukee Police Ass'n*, 708 F.3d at 930 (collecting cases). But, as the Seventh Circuit has explained, "[t]o qualify for that mootness exception, the ongoing policy must by 'its continuing and brooding presence, cast [ ] a substantial adverse effect on the interests of the petitioning parties.'" *Id.* at 932–33 (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (2000)). This exception is inapplicable.

As stated, neither the individual Plaintiffs nor PHPA has alleged or argued that the weight-limit policy has been enforced against any PHPA-member flight instructor. The individual Plaintiffs also have not presented any facts indicating that they presently are in danger of enforcement of the weight-limit policy against them. They have not demonstrated any injury whatsoever arising from the implementation of the weight-limit policy on April 1. There simply are no facts suggesting that the weight-limit policy constitutes a brooding presence on Plaintiffs' employment or that it has an adverse effect on the interests of Plaintiffs. In short, Plaintiffs' claims are moot, and Defendants' Rule 12(b)(1) Motion to Dismiss is due to be granted.

## C.   Ripeness

Defendants did not raise ripeness as a basis for Rule 12(b)(1) dismissal, but because ripeness affects subject matter jurisdiction, the court may raise it *sua sponte*. *See Johnson v. Sikes*, 730 F.2d 644, 647 (11th Cir. 1984). "Like mootness,

but unlike standing, ripeness is reevaluated throughout the course of litigation." *Milwaukee Police Ass'n*, 708 F.3d at 933 (holding that the settlement of the police officer's lawsuit removed any potential injury to the officer's union and, thus, the union's claims were no longer ripe). Additionally, because "ripeness is 'peculiarly a question of timing[,]' . . . intervening events are significant." *Henley v. Herring*, 779 F.2d 1553, 1555 (11th Cir. 1986); *see also Anderson v. Green*, 513 U.S. 557, 559 (1995) (per curiam) (Ripeness focuses on "the situation now rather than the situation at the time of the decision under review." (citation, brackets, and internal quotation marks omitted)). A "[r]ipeness analysis involves the evaluation of two factors: the hardship that a plaintiff might suffer without court redress and the fitness of the case for judicial decision." *Elend v. Basham*, 471 F.3d 1199, 1211 (11th Cir. 2006).

Here, Plaintiffs' claims fail to establish a ripe controversy based upon the second factor. Hardship for purposes of the ripeness analysis "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1128 (9th Cir. 2009). A plaintiff "must show that postponing review imposes a hardship on [him or her] that is immediate, direct, and significant." *Id.* (citation and internal quotation marks omitted).

As discussed, Plaintiffs have not shown that they suffered any injury as a result of the implementation of the weight-limit policy.  The absence of injury demonstrates that Plaintiffs will not suffer any immediate, direct, or significant hardship if judicial resolution of their claims is withheld.  *See Milwaukee Police Ass'n*, 708 F.3d at 933 (concluding that the question of mootness and ripeness converged in that the plaintiff's failure to show an injury both mooted the claims and demonstrated that the plaintiff "w[ould] face no hardship by withholding consideration").  Accordingly, Plaintiffs' claims are not ripe for adjudication, and, thus, dismissal is appropriate on the alternative ground of ripeness.

### III.  CONCLUSION

The Complaint seeks declaratory and prospective injunctive relief against Defendants to prevent future harm, but no live controversy exists between Plaintiffs and Defendants.  Plaintiffs' claims are moot or, alternatively, are not ripe.  Accordingly, it is ORDERED that Defendants' Motion to Dismiss (Doc. # 20) is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(1), and that this action is DISMISSED without prejudice.

DONE this 26th day of December, 2013.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE

17